UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
KENNETH LEWIS,

                              Plaintiff,                   **MEMORANDUM AND ORDER**

        - against -                           04-CV-5655 (DRH) (ETB)

THE CITY OF NEW YORK,
METROPOLITAN TRANSIT AUTHORITY,
LONG ISLAND RAILROAD, ROBERT
S. LEAHY, ROBERT VELEZ and
METROPOLITAN TRANSIT AUTHORITY
POLICE OFFICERS, JOHN DOE 1 through
20, the name John Doe being fictitious and
intended to represent those Metro Transit
Authority police officers engaged in the conduct
described in the complaint, all individually and
as members of the Metro Transit Authority,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
**A P P E A R A N C E S :**

**For the Plaintiff:**
**Jonathan Ginsberg & Associates, LLP**
80 Wall Street, Suite 1214
New York, NY 10005
By: Jonathan Ginsberg, Esq.

**Michael P. Mangan LLC**
80 Wall Street, Suite 1214
New York, New York 10005
By: Michael P. Mangan, Esq.

**For the Defendants Metropolitan Transit Authority s/h/a Metropolitan Transit Authority,
Long Island Rail Road, and Robert Velez:**
**Smith Mazure Director Wilkins Young & Yagerman, P.C.**
111 John Street, 20th Floor
New York, New York 10038-3198
By: Robert P. Siegel, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff Kenneth Lewis ("Plaintiff") commenced this action pursuant to 42

U.S.C. § 1983 alleging violations of his Fourth and Fourteenth Amendment rights, as well as state tort claims of assault and battery. Presently before the Court is the motion by defendants Metropolitan Transportation Authority, incorrectly sued as Metropolitan Transit Authority ("MTA"), Long Island Railroad ("LIRR") and Robert Velez ("Velez") (collectively, "Defendants") for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Plaintiff has not filed any opposition papers. For the reasons that follow, the Court grants Defendants' motion in its entirety.

## BACKGROUND

The following summary of facts comes from Plaintiff's deposition testimony.[1]

This case arises out of an altercation on the LIRR involving two off-duty police officers, Plaintiff and defendant Robert S. Leahy ("Leahy") on December 28, 2003. At that time, Plaintiff, an off-duty New York City Police Department ("NYPD") detective, was riding an eastbound LIRR train on the 1:18 a.m. Ronkonkoma Line. (Deposition of Kenneth Lewis ("Pl.'s Dep."), Ex. C to the Decl. of Robert P. Siegel, dated April 9, 2008 ("Siegel Decl."), at 46.) Prior to boarding the train, Plaintiff had spent the evening at a party at Club Remy in Manhattan, New York where he had consumed alcoholic beverages. (*Id.* at 41-46.) Plaintiff was wearing plain clothes and carried his firearm and detective shield. (Second Deposition of Kenneth Lewis ("Pl.'s Second Dep."), Ex. D to the Siegel Decl., at 14-21.)

Plaintiff was seated alone in a train car that was approximately half full. (Pl.'s Dep. at 49.) While engaged in a private conversation on his cellular telephone with his wife,

---

[1] There is no other evidence in the record beyond Plaintiff's deposition testimony which, at least arguably, might be viewed as providing some support for Plaintiff's claims.

2

Plaintiff repeated aloud his wife's statement that the passengers on the train sounded like "hillbillies" and "crackers." (Pl.'s Second Dep. at 85-93.) Plaintiff then got into a verbal exchange with three nearby male passengers. (*Id.* at 91-96.) Velez, an assistant conductor on the LIRR, walked into the train car, observed the altercation and yelled at Plaintiff to sit down. (Pl.'s Second Dep. at 95-96.) As Velez left, Plaintiff told Velez that "he needed to get his ass kicked." (*Id.* at 97.) At his deposition, Plaintiff explained that he made this statement "in the heat of the moment, while being antagonized by the[ three passengers]." (*Id.*) Plaintiff was aggravated that Velez was telling him to sit down and not directing his efforts at the other three passengers. (*Id.*)

Thereafter, Plaintiff proceeded down the aisle, intending to walk into the next car. (*Id.* at 104-05.) As Plaintiff headed toward the vestibule where Velez was standing, Leahy, also an off-duty NYPD police officer, grabbed Plaintiff's shoulders from behind and turned Plaintiff around. (*Id.* at 105-08.) Leahy told Plaintiff he had to get off the train at the Hillside Support Facility Station (the "Hillside Station"). (*Id.* at 109.) When the doors opened at the Hillside Station, a struggle ensued between Leahy and Plaintiff. (*Id.* at 109-10.) Leahy pushed Plaintiff backwards towards the door, knocking Plaintiff onto the platform. (*Id.* at 109-14.) As Plaintiff was being pushed out the door, Velez extended his arm forward to grab onto Plaintiff's arm, although Plaintiff was not sure whether this was done in order to prevent Plaintiff from falling backwards. (*Id.* at 110.) While on the platform, Leahy kicked Plaintiff's left leg out from under him, causing Plaintiff to fall and suffer permanent physical injury. (*Id.* at 113-14; Compl. ¶ 20.) While Plaintiff was on the ground, Leahy physically detained him by placing his knee and the weight of his body on Plaintiff's chest. (Pl.'s Second Dep. at 114-15.) Leahy then searched

3

Plaintiff and retrieved his weapon. (*Id*. at 116-123.) Plaintiff was removed from the platform and taken by ambulance to the hospital. (*Id.* at 127.)

On December 27, 2004, Plaintiff filed the instant action. The Complaint asserts three causes of action. The first cause of action alleges that Defendants violated Plaintiff's constitutional rights when Plaintiff was unlawfully detained, searched and deprived of a liberty interest against his will. It also alleges that Defendants used unreasonable, excessive force. The second and third causes of action assert state tort law claims of assault and battery.

By Notice of Motion dated April 25, 2007, Defendants moved for "summary judgment pursuant to FRCP 12(b)(6)." On December 4, 2007, the Court referred Defendants' motion to Magistrate Judge E. Thomas Boyle for a report and recommendation. On January 24, 2008, Magistrate Judge Boyle issued a Report and Recommendation (the "Report") that Defendants' motion be denied. By Memorandum and Order dated March 18, 2008, the Court adopted the Report, but granted Defendants leave to file a new motion pursuant to Rule 56 and issued a briefing schedule for that purpose.

Defendants now move for summary judgment with regard to Plaintiff's § 1983 claims on the ground that there is no evidence of a municipal policy or custom which led to Plaintiff's alleged constitutional injury. Defendants also seek judgment with respect to Plaintiff's state law claims on the basis that there has been no testimony that an MTA or LIRR employee made any contact with Plaintiff that was considered to be harmful or offensive. Plaintiff has not filed any opposition papers to the motion. For the reasons stated below, Defendants' motion is granted.

DISCUSSION

I. *Applicable Law and Legal Standards*

   A. *Unopposed Motion for Summary Judgment*

   The Second Circuit, in the seminal case of *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004), addressed the proper analysis that districts courts should employ when presented with an unopposed motion for summary judgment. The court held that "Fed. R. Civ. P. 56, governing summary judgment motions, does not embrace default judgment principles." *Id.* at 242. Thus, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Id.* In addition, "[a]lthough the failure to respond may allow the district court to accept the movant's factual assertions as true, *see* Local Civ. R. 56.2," *id.* at 246, the district court "must be satisfied that the citation to evidence in the record supports the assertion." *Id.* at 244.

   B. *Summary Judgment Standard*

   Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party

demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an

essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). More particularly, although "summary judgment should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). With these principles in mind, the Court turns to the arguments presented by Defendants.

## II. There is No Evidence to Establish Municipal Liability Against the MTA and LIRR Under Section 1983

A municipality generally cannot be held liable under Section 1983 for the alleged unconstitutional actions of its employees who are below a "policymaking level." That is,

7

municipalities cannot be held liable under the respondeat superior doctrine for their employees' torts. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, municipalities can generally only be liable for actions taken pursuant to "official municipal policy" that cause constitutional torts. *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir. 1979) (quoting *Monell*, 436 U.S. at 691). To hold a municipality liable in such an action, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

> A municipal policy or custom may be established in any of four ways:
>
> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with municipal employees.

*Bonds v. Suffolk County Sheriff's Dept.*, 2006 WL 3681206, at *3 (E.D.N.Y. Dec. 5, 2006) (citations omitted).

"A single incident alleged in a complaint, especially if it involved actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares v. New York*, 985 F.2d 94, 100 (2d Cir. 1993), *abrogated on other grounds as recognized in Hernandez v. Goord*, 312 F. Supp. 2d 537 (S.D.N.Y. 2004). Moreover, "[t]he mere assertion . . . that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Id.*

In particular, a complaint alleging that a municipality was "deliberately indifferent" to the need to train, monitor, or supervise an officer, but not alleging any facts beyond the specific instance giving rise to the complaint, generally fails to adequately to plead a custom or policy on the part of the municipality. *Id.*

Here, the Complaint does not allege a custom or policy of the MTA or the LIRR which led to Plaintiff's alleged constitutional violation. Nor does the Complaint allege that the MTA or the LIRR failed to train its officers and employees. Rather, the only reference made in the Complaint is that the LIRR "was responsible for the hiring, training, and supervision of employees of the [LIRR]," (Compl. ¶ 7), and that the MTA "was responsible for the hiring, training, supervision, disciplining and promoting the police officers, sergeants, agents and/or employees of the MTA Police." (*Id.* ¶ 10.) These general allegations do not amount to a claim of municipal liability.

In addition, the record is devoid of any evidence to allow a reasonable trier of fact to conclude that the MTA or the LIRR were engaged in a policy, practice or custom that caused Plaintiff's alleged constitutional injuries. In that regard, upon the Court's independent review of the record,[2] there is no evidence to substantiate a claim of inappropriate training or supervision of any MTA or LIRR employee. Accordingly, Defendants' motion for summary judgment on Plaintiff's § 1983 claims against the MTA and the LIRR is granted.

---

[2] The record, as proffered by Defendants only, consists of Plaintiffs' deposition testimony, as well as the deposition testimony of Velez, Leahy, and Kevin Faber, a LIRR conductor.

### III. There is No Evidence to Establish Individual Liability Against Defendant Velez Under Section 1983

#### A. *Personal Involvement*

In order to make a claim for individual liability under § 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). In addition, "'[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Id.* (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). Personal involvement can be established by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 127 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

#### B. *The Complaint*

The factual allegations contained in the Complaint with respect to the December 23, 2003 incident are as follows. After being verbally threatened by three aggressive white male passengers, and physically threatened by one of the aggressors,

> Plaintiff was approached within the train car by an Hispanic individual who had not been involved in the original exchange. The Hispanic individual was not wearing a uniform, did [not] identify himself, and told Plaintiff to sit down and to stop speaking. It was later learned that this Hispanic individual was an

10

> LIRR employee, defendant Robert Velez.
>
> Soon after being approached and confronted by Velez, who did not identify himself, Plaintiff was approached by a second individual who did not identify himself, a white male dressed in a gray hooded sweatshirt. The individual in the gray-hooded sweatshirt spoke aggressively to Plaintiff, telling Plaintiff to "shut-up." Plaintiff later learned that the individual in the gray-hooded sweatshirt was an NYPD off-duty police officer, defendant Robert S. Leahy.
>
> As Plaintiff attempted to move from the train car where he was seated and where he had received threats, Leahy and Velez came from behind Plaintiff and forcibly pushed Plaintiff from the train as the train pulled into Hillside Facility.
>
> . . . .
>
> As Plaintiff stood on the station platform, Leahy, with the assistance of Velez and in the presence of and condoned by MTA Police Officers, kicked Plaintiff's legs out from under him, causing Plaintiff to fall upon the station platform resulting in permanent physical injuries to his person, and other indignities and humiliation.
>
> Once on the ground, Leahy physically detained Plaintiff by placing his knee and the weight of his body on Plaintiff's chest, while Leahy searched Plaintiff.

(Compl. ¶¶ 16-18, 20-21.)

### C. *The Record Evidence*

#### 1. *Plaintiff's Deposition Testimony*

At his deposition, Plaintiff testified that his first encounter with Velez occurred when Velez walked into the train car and yelled at Plaintiff to sit down. (Pl.'s Second Dep. at 94-96.) Velez then left. (*Id.* at 96.) The next time Plaintiff saw Velez was at the vestibule of the train. (*Id.* at 104-06.) In contrast to the allegations in the Complaint, Plaintiff testified that he was grabbed from behind by Leahy, not both Leahy and Velez, and was pushed backwards

11

towards the open train doors by Leahy. (*Id.* at 106-10.) When asked during his deposition where Velez was during this incident, Plaintiff testified as follows:

> A     Mr. Velez attempted to grab on with [Leahy] as I was going out.
>
> Q     What do you mean by that – in other words, what gestures, if any, did you observe Mr. Velez make?
>
> A     He reached forward with his hand to grab onto me.
>
> Q     You're indicating your arm extended outward?
>
> A     Correct.
>
> Q     Did Mr. Velez actually touch you?
>
> A     Yes, he grabbed my arm.
>
> Q     Which arm did he grab?
>
> A     The right arm.
>
> Q     Was that to prevent you from going backwards?
>
> A     I don't know what he was doing, sir, I don't know what he was doing.

(*Id.* at 110; *see also* Pl.'s Dep. at 103-04 (noting that Velez grabbed Plaintiff's arm for seconds).) This testimony constitutes the only evidence concerning a touching or contact made by Velez.

According to Plaintiff's testimony, when Leahy knocked his left leg out from under him, Leahy was the only individual touching Plaintiff. (Pl.'s Second Dep. at 111-114.) When asked if Plaintiff knew where Velez was during this incident, Plaintiff testified that "when Officer Leahy knocked me down, I didn't say that Velez was there." (*Id.* at 114.) After he was on the ground on the platform, Plaintiff testified that Leahy detained him and removed his weapon with the help of another individual. (*Id.* at 115-120; Pl.'s Dep. at 108-110, 117.) He

12

also testified that during the time he was on the platform, Velez was on the train. (Pl.'s Second Dep. at 121.) Finally, Plaintiff testified that it was his belief that Velez acted improperly with regard to the events in that he didn't assess the situation:

> [Velez] should have approached me in a manner, in a way that – one, it was a heated situation already; he should have approached me in the manner that he could get my attention and identified himself, tell me who he is and talk to me instead of yelling and hollering at me from a distance. If he would have came close enough to talk to me, we probably wouldn't be sitting here now talking.

(*Id.* at 137-38.)

### 2. *Other Deposition Testimony*

Velez testified that at the time of the incident, he was an assistant conductor with the LIRR. On December 28, 2003, he was approached by an hysterical woman who told him that there was a man arguing with her boyfriend in the second car and that he had a gun. (Deposition of Robert Velez ("Velez Dep."), Ex. E to the Siegel Decl., at 52.) Velez then walked into that car and observed Plaintiff and another passenger yelling at each other. (*Id.* at 65-66.) Velez also noted that Plaintiff had a firearm on his belt. (*Id.* at 68.) Velez asked the two of them what was going on. (*Id.* at 67.) Velez raised his voice because the two passengers were yelling. (*Id.*) Velez asked Plaintiff whether he was a police officer to which Plaintiff responded "fuck you" and "I'll kick your ass." (*Id.* at 68-69.) Velez further testified that Plaintiff had his hand on his weapon while yelling at the other passenger. (*Id.* at 74.) Leahy approached and identified himself as a police officer. (*Id.* at 75.) Leahy told Velez to back away at which point Velez "got on the PA" and told the conductor "to call the 204 [the Movement Bureau]" because there was a "situation." (*Id.* at 76.) When the train was approaching the Hillside Station, Velez

13

saw Leahy and Plaintiff walking toward the vestibule. (*Id.* at 92.) When the doors opened, Plaintiff stepped off the train. (*Id.* at 97.) It seemed like Plaintiff tried to come back on the train and bumped into Leahy. (*Id.*) The next thing he knew, Plaintiff was on the ground. (*Id.* at 98.) Velez testified that he did not touch Plaintiff at any time prior to or after the time that Plaintiff hit the ground on the platform. (*Id.* at 100.) He also testified that he did not assist Leahy in preventing Plaintiff from re-entering the train. (*Id.*.)

Defendants also proffer the deposition testimony of Leahy. A review of Leahy's deposition testimony reveals no mention of Velez being involved in the altercation on the train in any way. (Deposition of Robert Leahy ("Leahy Dep."), Ex. F to the Siegel Decl.)

Finally, Defendants submit the deposition testimony of Kevin Faber, an LIRR conductor working at the time of the incident. (Deposition of Kevin Faber ("Faber Dep."), Ex. G to the Siegel Decl.) Faber testified that he saw Velez gesturing for Plaintiff to calm down and that Plaintiff had a gun in his hand. (*Id.* at 20.) Plaintiff started yelling at Faber, asking him which side he was on. (*Id.* at 22.) Faber left the car to call the Movement Bureau to ask for immediate assistance at the Hillside Station due to a passenger with a gun. (*Id.* at 27.) Thereafter, Leahy asked Faber if he could help and Faber responded by asking Leahy to escort Plaintiff off the train. (*Id.* at 29.) Leahy then walked up to Plaintiff, presented himself as a police officer, and told Plaintiff he had to leave the train. (*Id.* at 32.) Faber further testified that Plaintiff followed Leahy off the train and onto the platform and that when Leahy stepped back onto the train, Plaintiff pushed Leahy from behind, resulting in an altercation between Plaintiff and Leahy. (*Id.* at 38-39.) At no point in his testimony did Faber indicate that Velez was involved in any way in the melee between Plaintiff and Leahy.

14

**D.	*There is no Evidence From Which a Reasonable Trier of Fact Could Conclude that Velez was Personally Involved in the Alleged Constitutional Violation***

According to the Complaint, the alleged constitutional violations are that: (1) Plaintiff was illegally detained, searched and deprived of liberty against his will; and (2) Defendants acted with excessive force. (Compl. ¶¶ 29, 30.) There is no evidence, however, that Velez had any involvement in any of these events. In this regard, there has been no showing that Velez was personally involved in the restraint of Plaintiff on the platform or in the administering of force that allegedly caused Plaintiff's injuries. Nor is there any evidence that Velez ever directed or supervised Leahy, the off-duty police officer, in what he was doing, or that Velez could have ordered Leahy to stop what he was doing. The only evidence of Velez's conduct as related to the December 28, 2003 incident is found in Plaintiff's deposition testimony wherein he testified that Velez yelled at Plaintiff to sit down and that Velez grabbed Plaintiff's right arm for a few seconds while Plaintiff exited the train. This evidence is insufficient to create a causal link between the actions of Velez and the claimed violations. Because the requirement of personal involvement has not been met, Defendants' motion for summary judgment dismissing Plaintiff's § 1983 claim against Velez is granted.[3]

---

[3] The Court recognizes that Plaintiff's Complaint alleges that Leahy *and* Velez forcibly pushed Plaintiff from the train and that Velez assisted Leahy in kicking Plaintiff's legs out from under him, causing him to fall on the platform. (Compl. ¶¶ 18, 20.) However, these allegations contradict Plaintiff's deposition testimony, wherein Plaintiff testified that Leahy was the only individual touching him on the platform and that Velez was on the train at that time. (*See*, *e.g.*, Pl.'s Second Dep. at 114 ("[W]hen Officer Leahy knocked me down, I didn't say that Velez was there.")) Accordingly, the Court finds that the allegations in the Complaint, in and of themselves, are insufficient to create a genuine issue of fact for trial. *See Jeffreys v. City of N.Y.*, 426 F.3d 549, 555 (2d Cir. 2005) ("[W]e hold that the District Court did not err in granting defendants' motion for summary judgment on the basis that Jeffreys's testimony-which was largely unsubstantiated by any other direct evidence-was 'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary

## IV. Plaintiff's State Law Claims are Dismissed

The second and third causes of action assert claims for battery and assault. The Court begins with a discussion of Plaintiff's claim for battery.

### A. The Evidence is Insufficient to Raise a Genuine Issue of Material Fact as to Battery

"To recover damages for battery, a plaintiff must prove that there was bodily contact, that the contact was offensive, i.e., wrongful under all of the circumstances, and intent to make the contact without the plaintiff's consent." *Higgins v. Hamilton*, 794 N.Y.S.2d 436, 436 (2d Dep't 2005) (citations omitted); *see also Green v. City of N.Y.*, 465 F.3d 65, 86 (2d Cir. 2006) ("New York defines . . . 'civil battery [as] an intentional wrongful physical contact with another person without consent.'") (quoting *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41 (1st Dep't 1998)). "An offensive contact is one which offends a reasonable sense of personal dignity." *New York Pattern Jury Instructions* 2d 3:3 (2009) (citations omitted); *see also Campoverde v. Sony Pictures Entertainment*, 2002 WL 31163804, at *8 (S.D.N.Y. Sept. 30, 2002) ("The test is what an ordinary person not unduly sensitive would find offensive.") (citations and internal quotation marks omitted). "The intent required for battery is intent to cause a bodily contact that a reasonable person would find offensive." *Armstrong v. Brookdale Univ. Hosp. and Med. Ctr.*, 425 F.3d 126, 134 (2d Cir. 2005) (quoting *Jeffreys v. Griffin*, 1 N.Y.3d 34 (2003) (quoting *New York Pattern Jury Instructions* 2d 3:3 (2003))).

Drawing all inferences in Plaintiff's favor, the only contact between Plaintiff and Velez occurred when Velez allegedly grabbed Plaintiff's right arm for a few seconds while

---

to credit the allegations made in his complaint.").

Plaintiff was being pushed backwards towards the open train doors by Leahy.[4] When asked whether Velez grabbed Plaintiff so as to prevent him from falling backwards, Plaintiff replied that he "[did not] know what [Velez] was doing." (Pl.'s Second Dep. at 110.) Plaintiff further testified that Velez was in no way part of the physical altercation that took place between Plaintiff and Leahy on the platform.

The Court finds that a reasonable trier of fact could not, based on Plaintiff's deposition testimony alone, conclude that Velez's contact was offensive. Velez does not claim that the contact was offensive, inferentially or otherwise, and there is no information in the record to suggest that a reasonable person in Plaintiff's position would have found Velez's contact offensive. All we know from Plaintiff's testimony is that Velez reached out to Plaintiff as he was being pushed backwards out of an open train door, in fact grabbed Plaintiff's right arm for a few seconds, and Plaintiff did not know why Velez did so. Absent more details regarding the circumstances surrounding Velez's alleged contact, there is simply not enough information in the record that would permit a jury to conclude that "an ordinary person not unduly sensitive would find [Velez's contact] offensive" absent rank speculation. *Campoverde*, 2002 WL 31163804, at *8. Accordingly, the Court finds that Plaintiff has failed to meet his burden of demonstrating that there is a genuine issue of material fact to be tried with regard to his battery claim.

---

[4] The only evidence of this contact is found in Plaintiff's deposition testimony. Velez testified that he did not touch Plaintiff at any time and Leahy and Faber testified that Plaintiff stepped off the train and made no mention of any contact with Velez.

### B. *The Evidence is Insufficient to Raise a Genuine Issue of Material Fact as to Assault*

"New York defines 'assault' as 'an intentional placing of another person in fear of imminent harmful or offensive contact.'" *Green*, 465 F.3d at 86 (quoting *Charkhy*, 678 N.Y.S.2d at 41.) "'To sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact.'" *Rafter v. Bank of Am.*, 2009 WL 691929, at *12 (Mar. 12, 2009) (quoting *Fugazy v. Corbetta*, 825 N.Y.S.2d 120, 122 (2d Dep't 2006)).

Here, Plaintiff never testified that he was in fear of any contact from Velez, nor can such an inference be reasonably drawn from Plaintiff's testimony. In fact, Plaintiff testified that Velez reached out for Plaintiff as Leahy pushed him off the train, grabbed onto Plaintiff's right arm for a few seconds, and that Plaintiff "[did not] know what [Velez] was doing." (Pl.'s Second Dep. at 110.) Accordingly, the Court finds that Plaintiff has failed to raise a genuine issue of material fact as to his assault claim.

### CONCLUSION

For the foregoing reasons, the motion by defendants MTA, LIRR and Robert Velez for summary judgment is GRANTED in its entirety.

**SO ORDERED.**

Dated: Central Islip, New York
      March 31, 2009               /s/
                                            Denis R. Hurley,
                                            United States District Judge